## A96A0112. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY v. WILEY.
### (469 SE2d 302)

BEASLEY, Chief Judge.

Nationwide Mutual Fire Insurance Company appeals from a judgment based on a jury verdict in favor of its insured, Debra Wiley. The seven enumerated errors primarily dispute the denial of motions for directed verdict on several issues. For the reasons that follow, we affirm.

Nationwide issued Wiley a homeowner's insurance policy in 1992, and less than one month later, the home was destroyed by fire. When Nationwide failed to pay her claim, Wiley sued. Following a four-day jury trial, a jury awarded Wiley $72,000 for the destroyed dwelling, $40,000 for the contents, and $20,000 for loss of use. The $132,000 total was subject to a set-off of $32,655.79 for Nationwide's payment to the mortgagee.

1. Nationwide contends it was due a directed verdict as to the entire claim because Wiley materially misrepresented her ownership interest on the proof of loss forms, in that the property was owned by her husband who had died intestate in 1989 and the title was never placed in her name. Nationwide further claims that Wiley told the insurance agent she was the owner of the property when, in fact, she was not the sole owner. It argues that Wiley failed to accurately complete the paperwork and should have written, "Debra Wiley and children" or "the estate of Emmitt Wiley."[1]

When a policy of insurance is issued "where the agent has full and actual disclosure of the ownership of the property, the insurer waives its rights under the policy and is estopped to claim an avoidance of responsibility under the contract as written because of noncompliance with the conditions as to ownership which preclude coverage under the terms of the contract." *Barnum v. Sentry Ins.*, 160 Ga. App. 213, 217 (3) (286 SE2d 445) (1981). Holliday, the agent who arranged Wiley's coverage, testified she knew Wiley was a widow with two minor children and that Wiley was acting on behalf of herself and her children in obtaining the insurance coverage. Holliday testified she actively solicited Wiley's homeowner's insurance coverage business and advised Wiley, "You need to do these things [obtain suffi-

---

[1] At the time of the fire, Debra Wiley was the administratrix of her late husband's estate and she is the natural guardian of two minor children, who were ages seven and nine.

cient homeowner's insurance coverage] to protect you and your family." This knowledge estopped Nationwide from avoiding its contractual responsibility. *Barnum,* supra at 217. Moreover, there is no evidence to fulfill the requirement that " '[i]t must appear that (an insured's) false statements were made wilfully and intentionally for the purpose of defrauding the insurer.' [Cit.]" *Ga. Farm &c. Ins. Co. v. Richardson,* 217 Ga. App. 201, 204 (457 SE2d 181) (1995).

2. Nationwide urges that Wiley made another coverage-precluding material misrepresentation in her application for insurance. Wiley told the agent the dwelling was a brick veneer house, purchased in 1989, but in fact it was a repossessed and renovated mobile home. The agent testified that had she known the residence was a mobile home, she could not have written an Elite II policy on it because it would not have qualified for that coverage.

Wiley presented evidence that the dwelling was not simply a bricked-up mobile home and that while the base was at one time part of a mobile home, the house was built by Wiley's late husband as new construction. Wiley testified in explicit detail explaining with great specificity how her husband had used the mobile home as a starting point but had extensively renovated, customized and altered both the interior and exterior. The jury heard evidence from both parties as to the nature of the home and viewed photographs taken both prior to and after the fire. Nationwide's own agent took photos and inspected the home before the policy was ever issued. The jury resolved the conflicting evidence of fact in Wiley's favor when it determined the policy covered the type of structure of Wiley's home.

"There is a presumption in favor of the validity of verdicts. [Cits.] And 'after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict.' [Cit.]" *Pepsi Cola Bottling &c. v. First Nat. Bank of Columbus, Ga.,* 248 Ga. 114, 115 (281 SE2d 579) (1981). A directed verdict was not appropriate.

3. Nationwide claims it was error to refuse to direct a verdict in its favor because Wiley failed to present any evidence as to the replacement cost or value of her home at the time it was destroyed by fire. It contends Wiley had the burden of proving the actual loss sustained pursuant to OCGA § 33-32-5, because the fire occurred within 30 days of the original effective date of the policy. In the alternative, the insurer argues that the judgment should be reduced by the difference between the property tax assessed value for the dwelling $42,053, and the policy amount for the dwelling $72,000.

The policy provided the measure of damages for the loss as being the replacement cost of the dwelling for equivalent construction. Wiley presented evidence of the county property tax assessment, and she testified without objection that the property was worth $75,000. As

the basis for her valuation, she explained she was familiar with the value of properties in her area and that C. T. Financial Service had performed a professional appraisal of her home. The record also contains the real estate inventory form prepared for the probate court indicating the property was valued at $62,500 in 1990, several years earlier. Wiley testified extensively regarding the renovations her husband and his helpers installed, including the roofing, plumbing, electrical wiring, a sunroom, and new appliances. In great detail, she explained the layout and composition of the house, including its bay windows, double French doors, encased garden tub, and custom built-in cabinetry. All witnesses who saw the property after the fire agreed that the home and all of its contents were a total loss. This constituted evidence of the loss sustained.

It is undisputed that Nationwide denied Wiley's claim. An absolute refusal by an insurer to pay within the time frame required under the contract waives the right of the insurer to insist upon compliance with the proof of loss provisions in a policy. *Walker v. General Ins. Co.*, 214 Ga. 758 (107 SE2d 836) (1959); *Ins. Co. of the West v. Dills*, 145 Ga. App. 183 (243 SE2d 549) (1978); *Gazaway v. Secured Ins. Co.*, 109 Ga. App. 428 (136 SE2d 531) (1964); *General Accident Fire &c. Corp. v. Azar*, 103 Ga. App. 215 (119 SE2d 82) (1961).

Moreover, the standard of appellate review of the denial of a directed verdict is the "any evidence" test. *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268 (1) (416 SE2d 274) (1992). Because the record includes evidence from which the jury could determine the value of Wiley's home, this enumeration fails.

4. Nationwide contends the court erred in entering the judgment for loss of use in the amount of $20,000 because Wiley presented no evidence to support it. The policy provided for payment of additional living expenses as follows: "If a covered loss requires you to leave the residence premises, we cover the required increase in living expenses you incur to maintain your normal standard of living. Payment will be for the shortest time required to repair or replace the premises."

There was evidence that Wiley had been out of her home since the date of the fire on April 15, 1992. She testified she stayed in a hotel and in a rented house. Wiley testified that her monthly rental expense ranged between $500 and $550.

Furthermore, the record fails to show that Nationwide ever moved for a directed verdict on this loss of use issue although it sought seven separate directed verdicts on others. The motion for a directed verdict on the entire claim was based solely on the ground that Wiley did not accurately state her interest on the proof of loss forms. See Division 1. We do not consider issues raised for the first time on appeal,. because the trial court has not had opportunity to consider them. *Dupree v. State*, 206 Ga. App. 4, 5 (2) (424 SE2d 316)

(1992).

5. Nationwide claims it was entitled to a directed verdict for the amount of its advance payments to Wiley ($2,000) and to a $2,000 reduction in the jury verdict for the loss of use payments previously made. The jury heard Wiley testify she received a total of $2,000 from Nationwide for additional living expenses (loss of use). Because the jury did not award the policy limit on the loss of use claim, the record does not show that the jury did not reduce its award by that sum.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 9, 1996 —
RECONSIDERATION DENIED MARCH 5, 1996 — 

*Simpson, Gray & Carter, Ralph F. Simpson, Joseph I. Carter,* for appellant.

*Carl A. Bryant,* for appellee.